UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ADRIANA BOTELLO, IN HER CAPACITY AS THE ADMINISTRATOR OF THE ESTATE OF RENE BOTELLO,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>RICHARD GAMMICK,<br><br>　　　　　Defendant. | Case No.: 3:03-cv-00195-RLH-VPC<br><br>**DECISION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW** |

　　　　This case was originally tried in late October and early November, 2007. On November 15, 2007, the Court entered a decision, findings of fact, conclusions of law, and a judgment against then-Plaintiff Rene Botello and in favor of then-Defendants on all claims. (Dkt. #199–200.) Adriana Botello (or "Plaintiff"), in her capacity as administrator of the estate of Rene Botello ("Botello"), subsequently appealed the Court's judgment to the Court of Appeals for the Ninth Circuit. The Ninth Circuit affirmed the judgment of this Court in all respects but two. First, the court held this Court erred when it found that Botello's complaint filed with the State of Nevada Attorney General ("AG") was made in Botello's official capacity and not as a private citizen, and therefore was not constitutionally protected speech. *Botello v. Gammick*, 347 Fed.

AO 72
(Rev. 8/82)

Appx. 277, 279 (9th Cir. 2009). Although Botello complained to the AG as "Detective Rene Botello" and raised issues Botello discovered while on the job and in relation to it, the circuit court nonetheless held that in complaining to the AG, "Botello was acting outside the scope of his official duties" and spoke as a private citizen. *Id.* Thus, his speech was constitutionally protected and formed the basis of Botello's First Amendment retaliation claim. *Id.* To establish a First Amendment retaliation claim against a government employer, a government employee must show (1) he engaged in protected speech; (2) the employer took "adverse employment action"; and (3) his speech was a "substantial or motivating factor" for the adverse action. *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (citations omitted).

Second, the Circuit court held that this Court "abused its discretion by excluding evidence of Defendant Gammick's alleged interference with Botello's position as a truancy officer[,]" and, in connection with elements (2) and (3) of the retaliation analysis, remanded the case "to determine whether Gammick engaged in an adverse action or was substantially motivated by Botello's constitutionally protected speech in the first instance." *Botello*, 347 Fed. Appx. at 279. The Court convened a trial before the Court for that purpose on March 22, 23, and 24, 2010, and now renders its Decision, Findings of Facts, and Conclusions of Law.

**DECISION**

The Court finds Plaintiff has not established that Defendant and Washoe County District Attorney Richard Gammick's directive, that employees of the DA's office not hear Botello's School Attendance Advisory Board ("SARB") presentations, was an adverse employment action or that Botello's constitutionally protected speech was a substantial or motivating factor behind the directive. The Court further concludes that even if Gammick's action violated Botello's First Amendment right to be free from retaliation, that right was not clearly established at the time Gammick issued his directive. As such, Plaintiff has failed to prove her case, and the Court finds in Gammick's favor.

/

# FINDINGS OF FACT

1. The Court adopts and incorporates by reference the Findings of Fact and Conclusions of Law it issued in its Order dated November 15, 2007, with the exception of its conclusion and finding reversed by the Ninth Circuit—namely, that Botello's complaint to the AG was made in his official capacity and thus not constitutionally protected. (Dkt. #199, Decision Findings of Fact and Conclusions of Law 9 ¶ 2.)

2. As noted in the Court's previous Findings of Fact and Conclusions of Law, Botello's conduct during interviews in the *Reyes-Chavez* investigation violated *Miranda* law and Washoe County Sheriff's Office practices and procedures. Based on Defendant Gammick's review of Botello's conduct in the *Reyes-Chavez* investigation, Gammick determined that Botello's "credibility was sufficiently suspect that the District Attorney's Office could not use him as a witness in any prosecution." (*Id.* 5 ¶ 22.) Gammick made the decision to not use Botello as a witness "prior to Botello's contact with either the FBI or the Nevada Attorney General in September 2002." (*Id.* 5 ¶ 22.) Botello filed a complaint with the Nevada AG on September 8, 2002, requesting an investigation of the Washoe County District Attorney's Child Abuse Response Examination (CARES) Program and alleging a possible joint cover-up by the Washoe County Sheriff's Office. The complaint demanded an audit of all examinations done by Nurse Clarkson. (*Id.* 6 ¶ 25–26.) Botello resigned from the Washoe County Sheriff's Office on September 13, 2002, effective September 27, and went to work for the Washoe County School District Police Department in early October that year. (*Id.* 7 ¶ 31.) Botello's complaint to the Nevada AG's office were not substantial or motivating factors in Gammick's decision to not use Botello as a witness in any criminal prosecution. (*Id.* 8 ¶ 41.) After officials of the School Police Department initiated contact with and made repeated requests from Gammick and others as to why the DA's office would not use Botello as a witness, Gammick or former Defendant John Helzer, Washoe County Chief Deputy District Attorney, "may have acknowledged simply that it was a credibility issue." (*Id.* 8 ¶ 37.)

3. On April 14, 2003, Botello sued Gammick, Helzer, and Washoe County for, among other things, taking adverse employment action against him in retaliation for his complaint to the Nevada AG, in violation of the First Amendment; defamation; and intentional infliction of emotional distress. (Dkt. #1, Compl. 15–19.)

4. Botello was terminated from his position as a school police officer in September 2003.

5. About the same time Botello was terminated from his position as a school police officer, he was hired by Washoe County School District as an attendance (or truancy) officer.

6. Botello worked as an attendance officer until he resigned on his own volition on March 31, 2004.

7. Among other duties, attendance officers interview students and the parents or guardians of students who have truancy problems. While attendance officers investigate and encourage student attendance, they lack authority to issue citations or arrest students for truancy.

8. In addition, when an attendance officer determines it would be helpful, the officer "takes" a student to the SARB. Attendance officers prepare reports and recommendations concerning a student's attendance problems and make related presentations before the SARB, which may be comprised of persons including law enforcement officers, social service personnel, health officials, and school officials.

9. During the time Botello was employed as an attendance officer, the SARB generally met weekly or biweekly during the schoolyear. At each meeting, the SARB heard attendance officer presentations concerning four to five students. Each SARB meeting was led by a chairperson—sometimes a lawyer and sometimes a non-lawyer—who called the meeting to order, introduced the SARB members and, following the presentations concerning students, issued the board's recommendations. Sometimes, based on the information it received, the SARB recommended to police that the student be cited. In addition, if the student, parents, or guardians

1   did not comply with SARB recommendations, the SARB was obligated to report the pupil to law

2   enforcement for investigation and possible issuance of a citation.

3   10.     One of Botello's then co-attendance officers, Janet Carthen, testified that she

4   attended SARB hearings approximately twice a month.

5   11.     While Carthen never testified during her six years as an attendance officer, she was

6   once subpoenaed.

7   12.     At the time Botello worked as a truancy officer, Sue Edmondson, a Deputy DA

8   under Gammick's supervision, was one of several people who sat as the chairperson of the SARB.

9   She did so until February 2004, when she was replaced by another deputy DA.

10  13.     The Court finds credible Carthen and Edmondson's testimony that, during the time

11  Botello worked as an attendance officer, Edmondson generally chaired the SARB once a month.

12  14.     The Court also finds credible Carthen's testimony that, during the time Botello

13  worked as an attendance officer, Edmondson did not chair the SARB every month.

14  15.     As noted above, Gammick, who was the District Attorney but not Botello's

15  employer, ordered that employees within the DA's office not use Botello as a witness in any

16  prosecution. Based on Gammick's directive, Edmondson concluded she could not hear Botello's

17  SARB presentations. Edmondson called Botello's supervisor, Mieras, and told him this

18  information.

19  16.     In the course of their conversation, Mieras and Edmondson agreed that Edmondson

20  would arrange her schedule so as to not sit on the SARB panel on the days that Botello would

21  present. This agreement was made at or near the beginning of Botello's employment as an

22  attendance officer.

23  17.     Gammick approved the plan that Edmondson would arrange her schedule so as to

24  not sit on the SARB panel on the days that Botello made presentations. (For brevity, and because

25  due to Gammick's approval the plan can be fairly attributed to him, the Court hereafter refers to

26

the plan for Edmondson and her successor to avoid hearing Botello's presentations as "Gammick's directive.")

18.     The Court finds that at the time Gammick approved the directive, he knew little about the duties of attendance officers, and believed they were peace officers.

19.     Gammick's directive, which prohibited his employees from hearing Botello's SARB presentations, effectively prohibited his employees from communicating with Botello even about matters outside the subject matter of the litigation.

20.     One reason Gammick sought to avoid communication between Botello and employees of the DA's office was to comply with Rule 4.2 of the Nevada Rules of Professional Conduct, which prohibits lawyers from speaking with parties the lawyers know to be represented by counsel about the subject of the representation unless authorized by law, by the represented party's counsel, or by court order.

21.     The Court finds that Gammick gave this broad directive, at least in part, to ensure that Botello would not communicate with his employees about the subject matter of the litigation and to thereby reduce the risk of a bar complaint against his office.

22.     The Court also finds that Gammick instructed his employees to avoid hearing Botello's presentations to avoid potential contact with an adverse represented party, and because of Gammick's concerns about Botello's credibility if he were to testify.

23.     The Court finds that Gammick's actions were not motivated by Botello's prior speech to the Nevada AG's office.

24.     Carthen understood that when Edmondson was present, Botello's co-attendance officers could present Botello's cases for him. Carthen made at least one presentation for Botello when Edmondson was present.

25.     The Court finds that if Botello had attempted to make a presentation before a SARB panel chaired by Edmondson, she would have left the meeting and waited until Botello had completed the presentation.

AO 72
(Rev. 8/82)

26. The Court also finds credible Mieras' testimony that it was not uncommon for attendance officers to present one another's cases before the SARB due to circumstances including sickness, and vacation, and other scheduling conflicts.

27. In accordance with the directive, neither Edmondson nor her successor chaired the SARB when Botello made presentations.

28. The Court finds that Gammick's directive was merely a scheduling condition on DA employees (namely Edmondson and her successor), and that the scheduling condition did not materially restrict Botello's ability to carry out his job responsibilities.

29. While Botello claimed the condition materially restricted his ability to do his job, (*see, e.g.*, Pl.'s Exs. 77, 80 (emails from Botello to Edmondson and Mieras)), the Court finds credible Edmondson's testimony that the condition was merely a scheduling arrangement.

30. The Court also finds that no reports were ever made to Mieras of anything going wrong with regard to the scheduling condition and Botello.

31. The Court also finds that even if Gammick's directive restricted Botello's ability to make presentations, the directive merely constituted a scheduling issue, and was not a result of retaliation.

32. Plaintiff presented no persuasive evidence establishing another conclusion. Plaintiff presented no evidence, for example, that Botello was unable to make all the SARB presentations he desired by presenting on days when persons other than Edmondson chaired the SARB.

**CONCLUSIONS OF LAW**

1. Gammick, a public official who was not even Botello's employer, did not interfere with Botello's employment in any way so as to constitute an adverse employment action under the law in this Circuit. Gammick did not discipline Botello; file an adverse report against him; ban him from attending meetings; investigate his activities as an attendance officer; suspend or insult him; cause a change of his duties; or verbally harass, threaten, or humiliate him. *Coszalter*, 320

7

1  F.3d at 975–77 (collecting cases where above actions held to constitute adverse employment
2  actions).
3  2.	There is no evidence that Gammick's directive was reasonably likely to deter
4  Botello from engaging in protected speech, actually deterred him from such speech, or was given
5  in retaliation for past protected speech. *See id.* at 976. In short, Gammick took no adverse
6  employment action against Botello.
7  3.	Even if Gammick's directive constituted an adverse employment action, Botello's
8  prior protected speech was not a substantial or motivating factor for the directive. The directive
9  does not satisfy any of the three ways in which a plaintiff can establish that retaliation was a
10  substantial or motivating factor. *See id.* at 977–78 (to establish that adverse employment action
11  was substantially motivated by protected speech, plaintiffs can show (1) "proximity in time
12  between the protected action and the allegedly retaliatory employment decision, from which a jury
13  logically could infer that the plaintiff was terminated in retaliation for his speech[;]" (2) that "his
14  employer expressed opposition to his speech, either to him or to others[;]" and (3) that "his
15  employer's proffered explanations for the adverse employment action were false and pre-textual")
16  (citation, alterations, and internal quotation marks omitted). The Court enters conclusions as to
17  each of these factors in turn.
18  4.	First, the time from Botello's constitutionally protected speech to the Nevada AG
19  (September 13, 2002) and Gammick's directive (September 2003) was approximately one year.
20  There is no close proximity from which the Court can infer retaliatory intent.
21  5.	Second, Gammick disagreed with Botello's allegations regarding Nurse Clarkson
22  and was not happy with Botello's complaint to the Nevada AG. But Gammick's disapproval of
23  those allegations and actions has not been shown to be the basis for his scheduling restriction on
24  Edmondson and her successor.
25  6.	Third, Gammick's explanations for his directive to Edmondson were not false or
26  pretextual. The Court addresses both proffered explanations.

8

7.     Gammick had the right to instruct his employees to avoid communication with Botello in order to avoid violating Rule 4.2 of the Nevada Rules of Professional Conduct.[1] The fact that the directive went beyond the limited requirements of Rule 4.2 is not evidence of falsity or pretextuality. Gammick had the right to avoid the possibility of communication between his office and Botello, who had sued Gammick, Washoe County, and Helzer (Chief Deputy District Attorney), and to avoid additional claims of retaliation should Edmondson make an adverse ruling on one of Botello's SARB presentations.

8.     Gammick's directive was also in part an extension of his decision to preclude Botello from testifying due to Botello's perceived lack of credibility. Although the evidence at trial showed attendance officers are unsworn and rarely if ever testify, Gammick was under the misunderstanding that Botello was a peace officer. Moreover, it is possible that Edmondson would have been required to weigh the credibility of Botello's statements to the SARB in determining whether to recommend that a student be cited. Hence, Gammick's concern that Botello, as an attendance officer, might testify or that his credibility might be placed at issue was not false or pretextual.

9.     The Court also concludes that, given Botello's pending lawsuit, Gammick's concerns about Botello's credibility, and the rule against communications with a represented party, even if Botello had a right to make SARB presentations on days Edmondson and her successor chaired the SARB, that right was not clearly established at the time Gammick approved the avoidance plan, and Gammick is therefore entitled to qualified immunity. *Pearson v. Callahan*, 129 S. Ct. 808, 815–16 (2009).

10.    If any Finding of Fact is considered to be a Conclusion of Law, or any Conclusion of Law is considered to be a Finding of Fact, it is the Court's intention that it be so considered.

---

[1] Rule 4.2 provides that, "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

AO 72
(Rev. 8/82)

# CONCLUSION

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Gammick's directive that Edmondson and her successor avoid hearing Botello's SARB presentations was not an adverse employment action, and was not was substantially motivated by Botello's constitutionally protected speech. Even if there was a constitutional violation, Gammick is entitled to qualified immunity. The Court therefore finds in favor of Gammick and against the Plaintiff.

Dated: April 30, 2010.

_____
ROGER L. HUNT
Chief United States District Judge